ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| CRISTOPHER REYES RODRÍGUEZ<br><br>RECURRENTE<br><br><br>v.<br><br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACION DEL GOBIERNO DE PUERTO RICO<br><br>RECURRIDO | TA2025RA00270 | Revisión administrativa procedente del Departamento de Corrección y Rehabilitación<br><br>Confinado Núm.: 286314<br><br><br>Sobre:<br>Evaluación de candidatos para el Programa de Pase Extendido y otros Programas de Desvíos |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 3 de diciembre de 2025.

El 5 de octubre de 2025, el señor Christopher Reyes Rodríguez (el señor Reyes Rodríguez o el recurrente) presentó ante nos una *Revisión Judicial* en la que solicitó que revoquemos la determinación titulada *Respuesta de la Planilla de Información necesaria para evaluar candidatos para el programa* emitida el 28 de agosto de 2025, notificada el 8 de septiembre de 2025, por el Departamento de Corrección y Rehabilitación (el DCR o parte recurrida).[1] En el aludido dictamen, le fue denegado al recurrente beneficiarse del Programa de Pase Extendido con Monitoreo Electrónico tras no cumplir con el término estatutario para participar de dicho programa.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen recurrido.

---

[1] Entrada Núm. 1 del caso TA2025RA00270 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

**I.**

El caso de autos tiene su origen cuando el 7 de mayo de 2025, el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI o foro primario) emitió una *Sentencia* en la que encontró culpable al señor Reyes Rodríguez por infringir el Art. 6.08 de la *Ley de Armas de Puerto Rico de 2020,* Ley Núm. 168 del 11 de diciembre de 2019 (Ley Núm. 168-2019), según enmendada, 25 LPRA sec. 466g.[2] El TPI le impuso una pena de dos (2) años de restricción domiciliaria como pena alterna de cárcel, los cuales debían ser cumplidos consecutivos con cualquier otra sentencia.

Luego, el 5 de junio de 2025, nuevamente el foro primario emitió una *Sentencia Enmendada* (fraccionada) en la que el recurrente fue declarado culpable por violar lo dispuesto en el 3.1 de la *Ley para la Prevención e Intervención con la Violencia Doméstica,* Ley 54 del 15 de agosto de 1989 (Ley Núm. 54-1989), según enmendada, 8 LPRA sec. 631, tras el recurrente haber sido notificado el 28 de enero de 2025 sobre el fallo de culpabilidad.[3] El TPI ordenó al acusado a cumplir con una pena de treinta y seis (36) meses de cárcel, en adición a, nueve (9) meses de cárcel por la reincidencia alegada y, por tanto, tenía que completar un total de cuarenta y cinco (45) meses de cárcel. El foro primario determinó que el recurrente debía cumplir la sentencia de la siguiente forma: quince (15) meses para cumplir en una institución penal y treinta (30) meses bajo restricción domiciliaria con supervisión electrónica. Asimismo, decretó que el cumplimiento de dicha sentencia sería consecutivo con cualquier otra sentencia.

Así las cosas, el 28 de agosto de 2025, notificada el 8 de septiembre de 2025, el DCR le remitió un documento titulado *Respuesta de la Planilla de Información necesaria para evaluar candidatos para el programa* en el que le denegó al recurrente que pudiera cumplir la sentencia impuesta por el foro

---

[2] Entrada Núm. 5 del caso TA2025RA00270 en el SUMAC.
[3] Entrada Núm. 6 del caso TA2025RA00270 en el SUMAC.

primario con un pase extendido con monitoreo electrónico.[4] La parte recurrida razonó que:

> En cumplimiento con la sentencia (fraccionada) impuesta por el Tribunal que cuenta con un término específico de duración de: treinta y seis (36) meses de cárcel, más nueve (9) meses por la reincidencia alegada para un total de cuarenta y cinco (45) meses de cárcel. Se cumplirán de la siguiente forma:
>
> quince (15) meses para cumplir en una Institución Penal y treinta (30) meses de restricción domiciliaria con supervisión electrónica y será sometido a terapias para ofensores de Ley 54 en Restaurando Portillos. Se impone el pago de arancel Ley 183.
>
> Cuenta con vista de seguimiento relacionado al caso JLA2024G0230 por Art. 6.05 L.A. enm Art. 6.08 L.A. para el 15 de septiembre de 2025.[5]

Consecuentemente, la parte recurrida le denegó al señor Reyes Rodríguez el beneficio de cumplir su sentencia con un pase extendido con monitoreo electrónico.

Sin embargo, el 15 de septiembre de 2025, el TPI celebró una vista de seguimiento en la que resolvió que, hasta tanto el recurrente cumpliera con la sentencia impuesta por violentar el Art. 3.1 de la Ley Núm. 54-1989, *supra* sec. 631, en una institución penal, la parte recurrida no podía concederle al recurrente participar del programa de desvío. Ahora bien, el foro primario aclaró que, una vez cumpla con la sentencia previamente mencionada, entonces comenzaría la sentencia de restricción domiciliaria. Asimismo, aclaró que una vez cumpliera con el término de la sentencia con respecto a la violación al Art. 3.1 de la Ley Núm. 54-1989, *supra* sec. 631, entonces cumpliría con la sentencia emitida por infringir el Art. 6.08 de la Ley Núm. 168-2019, *supra* sec. sec. 466g.

Inconforme, el 5 de octubre de 2025, el recurrente instó una *Revisión Judicial* en la que formulo los siguientes señalamientos de error:

> Primer error: Erró el Programa de desvío del Departamento de Corrección y Rehabilitación al denegar la evaluación del recurrido para el programa de desvío debido a la sentencia (fraccionada) impuesta por el Tribunal cu[e]nta con un término específico de duración de treinta y seis (36) meses más nueve (9) meses por la reincidencia  para un total de cuarenta y cinco (45)

---

[4] Entrada Núm. 1 del caso TA2025RA00270 en el SUMAC.
[5] *Íd.*

meses de cárcel a cumplirse en quince (15) meses en una institución penal y treinta (30) meses de restricción domiciliaria con supervisión electrónica.

Segundo error: Erró el Programa de Desvío del Departamento de Corrección y Rehabilitación al denegar la evaluación del recurrido para el programa de desvío porque el recurrente contaba con vista de seguimiento relacionado al caso JLA2024G0230 por Art. 6.05 L.A. enm. At. 6.08 L.A para el 15 de septiembre de 2025.

En atención a nuestra *Resolución,* el 10 de noviembre de 2025, la parte recurrida radicó un *Escrito en cumplimiento de Resolución.*

Con el beneficio de la comparecencia de las partes, procederemos a resolver el caso ante nos.

**II.**

**A.**

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. *Otero* v. *Toyota,* 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Otero* v. *Toyota, supra,* pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. *Rebollo* v. *Yiyi Motors,* 161 DPR 69, 78 (2004). Las determinaciones de hecho de las agencias tienen a su favor una "presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas." *Henríquez v. Consejo Educación Superior,* 120 DPR 194, 210 (1987). Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota de P.R. Corp.,* 163 DPR 716, 727-728 (2005); *Domingo v. Caguas Expressway Motors,* 148 DPR 387, 397 (1999). Las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial

que no obra en el expediente administrativo. *Vázquez v. Consejo de Titulares*, 216 DPR ___ (2025), 2025 TSPR 56. Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surja del expediente. *Otero* v. *Toyota, supra,* pág. 728. El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728. La parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto de que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitan S.E. v. A.R.P.E.,* 138 DPR 200, 213 (1995) citando a *Hilton Hotels v. Junta de Salario Mínimo,* 74 DPR 670, 686 (1983).

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág.

728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728.

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos.  Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez v. Consejo de Titulares, supra.* La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares, supra.* Ello, como mecanismo interpretativo del poder judicial. *Íd.* Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota, supra*, pág. 729.  Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba.  *Íd.*  Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa".  *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* v. *Toyota, supra*, pág. 730. Al ejercer la función revisora, el

tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Por otro lado, las determinaciones de derecho, el tribunal tiene amplia autonomía para revisarlas en todos sus aspectos. *Rebollo* v. *Yiyi Motors*, *supra*, pág. 77.

**B.**

El Art. VI, Sec. 19, Const ELA [Const P.R], LPRA, Tomo 1, establece como política pública que, "...reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Cónsono con lo anterior, la ley orgánica del Departamento de Corrección y rehabilitación, Art. 2 de *El Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, Plan de Reorganización Núm. 2 de 21 de noviembre de 2011 (Plan de Reorganización Núm. 2-2011), según enmendado, 3 LPRA., Ap. XVIII, Art. 2, el DCR tiene el deber de custodiar y proveer una rehabilitación a las personas confinadas. Asimismo, el citado artículo dispone lo siguiente:

> Con la aprobación de este Plan, se decreta como política pública del Gobierno de Puerto Rico la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad.

Dentro de las facultades delegadas al Secretario del DCR, dicho ente administrativo tiene la facultad de "adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios". Art. 7 (aa) del Plan Núm. 2-2011 *supra* sec. Ap. XVIII, Art. 7. Por otro lado, tiene la facultad de "hacer las

evaluaciones, investigaciones y rendir los informes necesarios sobre la conducta del miembro de la población correccional y los transgresores; emitir opiniones sobre la imposición de fianzas y mantener una coordinación efectiva con la Junta de Libertad Bajo Palabra o el Tribunal". Art. 7 (z) del Plan Núm. 2-2011 *supra* sec. Ap. XVIII, Art. 7. Con ello, el Art. 16 del Plan Núm. 2-2011, *supra* sec. Ap. XVIII, Art. 16 dispone que,

> El Secretario establecerá mediante reglamento los objetivos de cada programa de desvío, cómo habrán de operar, los criterios y condiciones para la concesión de dicho privilegio, así como también los criterios, condiciones y proceso que habrá de seguirse para la revocación del privilegio y administrará los programas de desvío donde las personas convictas puedan cumplir parte de su sentencia fuera de la institución correccional. La opinión de la víctima habrá de tomarse en consideración como uno de los criterios para conceder el privilegio de ubicar a un miembro de la población correccional en un programa de desvío. No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas.
>
> […]
>
> b) toda persona convicta por la comisión de cualquier delito grave que no sea de los incluidos en el inciso (a) de este Artículo, hasta que haya cumplido por lo menos un veinte (20) por ciento de la sentencia de reclusión en una institución correccional, excluyendo toda clase de bonificaciones y se determine por el Secretario que no representa una amenaza para la comunidad;
>
> […]

Cónsono con lo anterior, el Art. VIII del *Reglamento del Programa Integral de Reinserción Comunitaria*, Reglamento Núm. 9488 del 9 de agosto de 2023 (Reglamento Núm. 9488) establece que,

> No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas:
>
> […]
>
> 2. Toda persona convicta por la comisión de cualquier delito grave que no sea de los incluidos en el inciso (a) de este Artículo, hasta que haya cumplido por lo menos un veinte (20) por ciento de la sentencia de reclusión en una institución correccional, excluyendo toda clase de bonificaciones y se determine por el Secretario que no representa una amenaza para la comunidad.
>
> […]

En lo pertinente a la controversia, el Art. VII del Reglamento Núm. 9488, preceptúa los requisitos para que un confinado pueda beneficiarse del

Pase Extendido con Monitoreo Electrónico. También, ostenta el deber de supervisar las personas que estén en condiciones de libertad provisional que le fueron impuestas a los confinados que estén bajo su jurisdicción. Art. 7 (ff) del Plan Núm. 2-2011 *supra* sec. Ap. XVIII, Art. 7. De igual forma, cuando una persona confinada incumpla con las condiciones de libertad provisional debe informar a los tribunales y a los funcionarios pertinentes sobre dicho incumplimiento. Art. 7 (gg) del Plan Núm. 2-2011 *supra* sec. Ap. XVIII, Art. 7.

**III.**

En el caso de epígrafe, el recurrente argumentó que, el DCR erró en denegarle al señor Reyes Rodríguez el poder beneficiarse del programa de desvío, ante las penas impuestas por el TPI en la *Sentencia Enmendada (Fraccionada).* A su vez, alegó que la parte recurrida erró en no atender correctamente, la solicitud del recurrente para participar del programa de desvío, por haber tenido una vista de seguimiento relacionada al delito del Art. 6.08 de la Ley de 168-2019, *supra* sec. 466g.

A tenor con lo establecido en nuestra segunda parte, el DCR tiene la facultad indelegable de proveer mecanismos para rehabilitar a las personas que se encuentran en una institución carcelaria. A esos fines, como parte de los programas e iniciativas del DCR en concederle diferentes mecanismos a los confinados para cumplir su sentencia y, a su vez reinsertarse en la sociedad, el DCR cuenta con diversos programas como lo es el, Programa de Desvío con monitoreo electrónico. En lo pertinente a la controversia ante nos, cuando un confinado sea sentenciado por cometer un delito grave, el Art. 16 de la Ley Núm. 2-2011, *supra* sec. Ap. XVIII, Art. 16, dispone que, para que un confinado se beneficie de dicho programa debe cumplir con un veinte (20) por ciento de la sentencia impuesta en una institución correccional.

Luego de examinar detalladamente el expediente ante nos, resolvemos que no se cometieron los señalamientos de error formulados por el recurrente.

De entrada, destacamos que la vista de seguimiento no incide en la denegatoria del DCR para que el recurrente no se beneficie del monitoreo con

paso extendido electrónico. Ello, puesto que el TPI en la vista de seguimiento se limitó en explicar como el señor Rodríguez Reyes debía cumplir las sentencias consecutivas impuestas por el *foro a quo.*

Así pues, el recurrente fue sentenciado el 5 de mayo de 2025 por infringir el Art. 6.08 de la Ley de 168-2019, *supra* sec. 466g. Posteriormente, el 7 de junio de 2025 el TPI emitió una *Sentencia Enmendada (Fraccionada)* en la que encontró culpable al señor Rodríguez Reyes por haber violentado lo dispuesto en el Art. 3.1 de la Ley Núm. 54-1989, *supra* sec. 631. En la citada *Sentencia,* el foro primario determinó el término y la forma en que el recurrente cumpliría la sentencia referente al Art. 3.1 de la Ley Núm. 54-1989, *supra* sec. 631. Ahora bien, el 15 de septiembre de 2025, el TPI aclaró cómo el recurrente debía cumplir con la sentencia impuesta por violentar el Art. 3.1 de la Ley Núm. 54-1989, *supra* sec. 631 y la sentencia emitida el 7 de mayo de 2025, por infringir el Art. 6.08 de la Ley de 168-2019, *supra* sec. 466g. Así pues, esta Curia concurre con la postura del DCR con respecto a que el recurrente no ha cumplido con el veinte (20) por ciento de la totalidad de la pena impuesta por el TPI. Ello, pues el recurrente no ha cumplido con el veinte (20) por ciento de la suma de las penas impuestas por el foro primario, las cuales resultan en una suma de dos (2) años y cuarenta y cinco (45) días que el recurrente debe cumplir. Además, atisbamos que el término de la sentencia que debe cumplir bajo restricción domiciliaria forma parte de la totalidad de la sentencia.

De igual forma, para que el recurrente pudiera participar de algún programa de desvío debe cumplir con diversos requisitos, los cuales este aún no ha cumplido. Nótese que, aun cuando el recurrente cumpla con el veinte (20) por ciento citado, debe cumplir con otros requisitos regulados por el DCR para poder ser considerado para participar del programa de desvío. Destacamos que, la vista de seguimiento no laceró el derecho del recurrente a poder participar del programa de desvío toda vez que el foro primario se

limitó en aclarar la forma en que el señor Rodríguez Reyes cumpliría las sentencias impuestas.

A la luz de lo esbozado, confirmamos la determinación recurrida toda vez que no se configuraron los errores coaligados por el recurrente tras el DCR denegarle que no cualificaba para participar del Programa de Desvío con Monitoreo electrónico.

**IV.**

Por los fundamentos que anteceden, confirmamos el dictamen recurrido.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
